IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHARLES W. MARTIN,

    Petitioner,                  No. CIV S-99-0223 WBS GGH P

    vs.

JAMES WALKER, Warden,[1]

    Respondent.               FINDINGS & RECOMMENDATIONS

_____/

*Introduction and Summary*

        This procedurally complex case was remanded from the Ninth Circuit to determine whether, for only several remaining claims in the petition, the timeliness procedural bar, aka procedural default, was well established and regularly applied. "On remand, in order to be able to maintain its affirmative defense of procedural default, the government must show that cases after <u>In re Clark</u>, 855 P.2d 729 (Cal. 2003), had sufficiently clarified the rule and that it has been consistently applied."

        For the reasons that follow, the undersigned answers both issues in the affirmative, although not completely based upon the rationale of respondent.

---

[1] James Walker is the warden who has custody over petitioner and is substituted in as respondent in the place of S.L. Hubbard pursuant to Fed. R. Civ. P. 25.

1

*Procedural History*

On August 21, 1995, petitioner was convicted of murder and robbery, and sentenced on September 18, 1995 to life in prison without the possibility of parole plus a one year consecutive sentence for use of a specified weapon in the crimes. The conviction and sentence were affirmed by the California Court of Appeal on January 29, 1997. A petition for review raising one issue (concerning admission of a taped statement) was denied on April 16, 1997. Thereafter, petitioner filed a round of habeas petitions in the state court, raising a number of issues along the way. The California Supreme Court denied the last petition (of that round) on procedural grounds citing In re Waltreus, 62 Cal. 2d 218, 225 (1965) and In re Dixon, 41 Cal. 2d 756, 759 (1953) (denial dated January 27, 1999). Neither of those cited cases are presently at issue now.

Petitioner Martin thereupon filed in federal court adding unexhausted claims – this despite three rounds of habeas petitions in the state courts. The undersigned sees no present need to dissect the federal petitions; suffice it to say that ultimately, petitioner was directed to exhaust the new claims. When petitioner attempted to exhaust newly formulated claims in the California Supreme Court, the petition was denied on September 11, 2002 citing In re Clark, 5 Cal. 4th 750 (1993), In re Robbins, 18 Cal. 4th 770, 780 (1998). Petitioner returned to federal court soon to be faced with respondent's combined statute of limitations/procedural bar (both Dixon and Clark/Robbins ) motion which resulted in dismissal of the entire petition. In pertinent part, relying on Bennett v. Mueller, 322 F.3d 573 (9th Cir. 2003), the district court found that petitioner had not articulated specific facts regarding the inadequacy of the timeliness procedural bar such that the burden of proving adequacy shifted to respondent. The Ninth Circuit determined on the basis of the then newly decided King v. Lamarque, 464 F.3d 963 (9th Cir. 2006), that where Circuit precedent had previously found a particular bar inadequate, petitioner's only Bennett burden was to object to the bar; no specific allegations as to the bar's inadequacy had to be made. The Ninth Circuit remanded only those claims whose dismissal

depended on the Clark/Robbins timeliness bar; dismissal of the other claims was affirmed. The particular claims remanded were: Claim 3: (ineffective assistance of counsel for failure to investigate claims of third party culpability), Claim 4: ineffective assistance of counsel for failure to object to admission of the Permenter taped interview, and subparts 2 and 3 of Claim 6: (ineffective assistance of appellate counsel for failure to raise admission of the Permenter taped interview and failure to raise insufficiency of evidence before the state supreme court on direct review). As set forth in the summary above, the remand specifically directed the adjudication of whether respondent had met his burden to prove the clarity and consistency of the timeliness bar.

*Discussion*

A. "Clearly Defined" and "Well Established"

In terms of the adequacy of a procedural bar, generally three aspects are referenced: whether the bar was clearly defined in state law, the related, even nearly synonymous, aspect of whether the bar was well established at the pertinent time for its imposition, and finally, whether the bar was regularly followed by the state courts, i.e., the consistency of its application.[2]

The first item to be discussed is a description of the bar.

\\\\\

---

[2] "The state procedural bar must be 'independent' of the federal question and "adequate to support the judgment." Coleman, 501 U.S. at 729, 111 S. Ct. 2546. A state procedural rule constitutes an "adequate" bar to federal court review if it was 'firmly established and regularly followed' at the time it was applied by the state court. Ford v. Georgia, 498 U.S. 411, 423-424, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991); Poland v. Stewart, 169 F.3d 573, 577 (9th Cir.1999). A state procedural rule constitutes an 'independent' bar if it is not interwoven with federal law or dependent upon a federal constitutional ruling. Ake v. Oklahoma, 470 U.S. 68, 75, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985); Michigan v. Long, 463 U.S. 1032, 1040-41, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983); La Crosse v. Kernan, 244 F.3d 702, 704 (9th Cir.2001).
Under the Ninth Circuit's decision in Bennett, 322 F.3d 573, once the state raises the existence of an independent and adequate state procedural ground as a defense, the petitioner must then raise 'specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule.' Bennett, 322 F.3d at 584, 586(quoting Hooks v. Ward, 184 F.3d 1206, 1217 (10th Cir.1999)). Otherwise, Petitioner must establish cause and actual prejudice to avoid imposition of the bar. Rich v. Calderon, 187 F.3d 1064, 1066 (9th Cir.1999)." Cooper v. Brown, 510 F.3d 870, 924 (9th Cir. 2007).

(1) Pursuant to policies adopted by this court in June 1989, a habeas corpus petition is not entitled to a presumption of timeliness if it is filed more than 90 days after the final due date for the filing of appellant's reply brief on the direct appeal. In such a case, to avoid the bar of untimeliness with respect to each claim, the petitioner has the burden of establishing (i) absence of substantial delay, (ii) good cause for the delay, or (iii) that the claim falls within an exception to the bar of untimeliness.

(2) Substantial delay is measured from the time the petitioner or his or her counsel knew, or reasonably should have known, of the information offered in support of the claim and the legal basis for the claim. A petitioner must allege, with specificity, facts showing when information offered in support of the claim was obtained, and that the information neither was known, nor reasonably should have been known, at any earlier time. It is not sufficient simply to allege in general terms that the claim recently was discovered, to assert that second or successive postconviction counsel could not reasonably have discovered the information earlier, or to produce a declaration from present or former counsel to that general effect. A petitioner bears the burden of establishing, through his or her specific allegations, which may be supported by any relevant exhibits, the absence of substantial delay.

(3) A claim or a part thereof that is substantially delayed nevertheless will be considered on the merits if the petitioner can demonstrate good cause for the delay. Good cause for substantial delay may be established if, for example, the petitioner can demonstrate that because he or she was conducting an ongoing investigation into at least one potentially meritorious claim, the petitioner delayed presentation of one or more other known claims in order to avoid the piecemeal presentation of claims, but good cause is not established by prior counsel's asserted uncertainty about his or her duty to conduct a habeas corpus investigation and to file an appropriate habeas corpus petition.

(4) A claim that is substantially delayed without good cause, and hence is untimely, nevertheless will be entertained on the merits if the petitioner demonstrates (i) that error of constitutional magnitude led to a trial that was so fundamentally unfair that absent the error no reasonable judge or jury would have convicted the petitioner; (ii) that the petitioner is actually innocent of the crime or crimes of which he or she was convicted; (iii) that the death penalty was imposed by a sentencing authority that had such a grossly misleading profile of the petitioner before it that, absent the trial error or omission, no reasonable judge or jury would have imposed a sentence of death; or (iv) that the petitioner was convicted or sentenced under an invalid statute. When we apply the first three of these exceptions, we shall do so exclusively by reference to state law. When we apply the fourth exception, we apply federal law in resolving any federal constitutional claim.

In re Robbins, 18 Cal. 4th 770, 780, 781, 77 Cal. Rptr. 2d 153, 159-160 (1998).

As is well known, the precise capital habeas standards above with respect to presumed time limits do not apply to regular habeas cases. Bennett v. Mueller, 322 F.3d at 583. Yet, it is also well established that the remainder of the policies do apply in principle, if not the letter, to non-capital habeas petitions. As respondent observes, In re Clark, at 783, 21 Cal. Rptr. 2d at 531, expressly so held (emphasis added):

> The [capital case] Policies[ FN18 omitted] *did not create or modify the timeliness requirements applicable to all habeas corpus petitions* except insofar as they (1) establish a presumption of timeliness if a petition by a capital defendant is filed within 90 days of the final due date for the filing of an appellant's reply brief (Policies, std. 1-1.1); and (2) take into account this court's decision in In re Stankewitz, supra, 40 Cal.3d 391, 220 Cal.Rptr. 382, 708 P.2d 1260, when evaluating the timeliness of a habeas corpus petition in a capital case (Policies, std. 1-1.3).

See also In re Sodersten, 146 Cal. App. 4th 1163, 1222, 53 Cal. Rptr. 3d 572, 612-613 (2007). If this were not so, it would make little sense for the California Supreme Court to cite the cases of Clark and Robbins, both capital cases, when determining a timeliness bar in ordinary habeas actions – a ruling and citation which occurs perhaps thousands of times a year. It would make little sense for the intermediate appellate courts to cite the capital cases in non-capital habeas actions if they had no application. If the California Supreme Court believes the capital habeas timeliness standards are applicable in the main to non-capital habeas cases, the federal courts are not permitted to determine that the state supreme court is misciting its cases on this matter of state law. Moreover, Bennett v. Mueller, supra had no difficulty in analyzing its non-capital habeas procedural bar issue relying on the Clark holding in that capital case. Indeed, the whole purpose of the Bennett opinion is to set up a procedure to judge the adequacy of the Clark procedural bar for its *non-capital* habeas case. This would be a curious opinion if Clark really had nothing to do with non-capital habeas cases.

Thus, the application and citation of Clark/Robbins rule is well established for non-capital habeas cases. Even the small sampling of cases provided by the parties demonstrates

the frequency with which the bar is imposed.

The related aspect to well established – "clearly defined" – is easily satisfied in the present case despite petitioner's insistence that the California "undue delay" standard is ill defined. Again, the undersigned relies on Bennett. There is no discussion in Bennett about a lack of clarity in the rule; rather Bennett easily distilled the rule to its essence: "Significant, unjustified delay in presenting habeas corpus claims to California state courts will bar consideration of the merits of the claim." Id. at 581. "Delay 'is measured from the time the petitioner or counsel knew, or reasonably should have known, of the information offered in support of the claim and the legal basis of the claim.'" Id, citing Clark and Robbins. Indeed, in terms of clarity, the state rule is identical to one of the commencement dates for the AEDPA limitations period: "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). If this principle of requiring due diligence is clear enough for federal practice, and it is, it is clear enough for state practice as well.

The procedures for petitioners to justify the delay as well as the exceptions to the rule, i.e., what will excuse a seeming lack of diligence on its face, are spelled out in Clark and Robbins and reiterated in subsequent cases. See Respondent's Brief at 14-15. Except for one consideration pertinent to the death penalty, the reasons why delay may be excused are generic and apply to all cases. While it is true that the timeliness bar and its exceptions will be applied on a case-by-case basis, this is no reason to find that the bar is not clear. Many rules regarding timeliness require such a case-by-case adjudication. See e.g. AEDPA limitations cases involving the doctrine of equitable tolling, e.g., Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003) ("Determining whether equitable tolling is warranted is a 'fact specific' inquiry." See also Wood v. Hall, 130 F.3d 373, 376 (9th Cir. 1997) (simply because a rule of state law requires discretion in its application is no reason to find the rule unclear).

\\\\\

In sum, if Bennett could succinctly state the rule without difficulty (as have the numerous state court decisions set forth below), the undersigned cannot find the rule unclear.

B. Consistently Applied

The real problem to discuss here is whether the timeliness bar is consistently applied. No case, to the undersigned's knowledge, has set forth a definitive approach to explain *how* the respondent meets his burden. Are we to use published cases only, unpublished, but explicative opinions, postcard denials?[3] Should we go behind the postcard denial to divine what the court may have been thinking? Should state court officials be subject to discovery? Should the district court go through this exercise time after time? None of this has been explained to date. For the reasons provided below, the only realistic way to determine the consistency of application of the timeliness bar in California is to explore published and unpublished *explicative* opinions.

It takes no citation of authority to find that published appellate opinions applying and/or explaining the Clark/Robbins should be reviewed. The Ninth Circuit has also held that explicative, unpublished opinions should be considered as well. Powell v. Lambert, 357 F.3d 871, 879 (2004). The real issue here is whether the so called "postcard denials," i.e., denials without explanation, or with a mere citation but no explanation, qualify for review to determine whether the state has met its Bennett burden.

The answer is "no." The unexplained denial, or unexplained determination to review and deny on the merits, is of absolutely no analytical value. A mere decision to apply the bar, or not to mention it relates nothing about the consistency of the bar's application. For example, a habeas petition, simply denied, indicates that the merits were reached. Assuming for the moment that the date of filing the petition would indicate on its face a rather lengthy delay,

---

[3] "Postcard denials" is the commonly used, but somewhat pejorative, term for the cryptic decisions of the state courts in habeas which simply deny the habeas petition without comment or explanation. But this practice is in reality no different in effect from that employed by the Supreme Court when it denies certiorari.

1 the decision to reach the merits could mean one of several things: a rigorous timeliness review
2 was applied, including the exceptions which are part and parcel of the bar, and the court found
3 justification or a viable exception; it could mean that petitioner did meet his burden to explain
4 the delay; it could mean that the court didn't even see the timeliness issue; it could mean that the
5 timeliness issue was so problematic that it was much easier in that case to reach the merits; it
6 could mean that the court arbitrarily determined that no bar would be imposed.  On the other
7 hand, if the petition is denied on the basis of the bar with express citation to Clark or Robbins,
8 we know the ultimate decision reached by the court, but not its reasoning.  The process of
9 reviewing the meaning of unexplained decisions with respect to the thinking of the court when
10 applying or not applying the bar is so speculative as to be worthless.  The parties here come to
11 conflicting opinions on every case whose pleadings were reviewed to understand why the
12 Clark/Robbins bar was not imposed.

13        Both  parties herein determine to dissect the pleadings in a sample of "silent
14 denial" cases for a snapshot of time to make their best guess about what was in the court's mind
15 with respect to the procedural bar issue in those cases where it might have been applied, but was
16 not. However, Ninth Circuit precedent directs that no such divination take place.  Bennett, 322
17 F.3d at 584. Furthermore, Bennett "suggested" that the review be limited to the *language* of the
18 *state court opinions*, Id. citing Valerio v. Crawford, 306 F.3d 742, 774-75 (9th Cir. 2002).  Thus
19 it is  pointless to review cases not containing any language explaining the determination.  While
20 Valerio in passing referenced unpublished "orders" of the lower courts, nothing in Valerio gave
21 license to guess at the reasoning for imposing a bar, or not, in cryptic minute orders.[4]

22        This is a different issue than arises in that part of the Bennett analysis where
23 petitioner must allege with specificity (except presently for the Clark/Robbins bar) that the bar is

---

[4] Moreover, even if one could obtain a multitude of explained trial court orders for analytical purposes, something not done here, the amount of resources expended to determine the propriety of not invoking a procedural bar approaches the absurd.

not consistently applied. There, the mere number of times a bar was not applied when it could have been could suffice for this de minimis burden. See <u>Bennett</u> (on remand) 364 F. Supp. 2d 1160 (C.D. Cal. 1160). However, it is then respondent's burden to explain anomalies without looking at pleadings underlying a silent denial and then speculating. As <u>Bennett</u> on remand put it, the state there understandably declined such an impossible task. <u>Id</u>. at 1175 (n.15).

Finally, the Supreme Court and <u>Bennett</u> have stressed that the doctrine of procedural bar has important constitutional considerations behind it. <u>Bennett</u> 322 F.3d at 582. Those important considerations should not be cast aside by application of a burden of proof on the state so onerous, or so lacking in reason, that the doctrine, in effect, has been purposefully or inadvertently stamped out of existence.[5]

Accordingly, the undersigned will utilize the language in published or unpublished explicative appellate opinions to determine whether the burden is consistently applied. There is no other practical, reasoned way to determine the issue.[6][7]

---

[5] It would be strange indeed that we indulge jurors with the presumption of following the law as set forth in instructions, <u>United States v. Heredia</u>, 483 F.3d 913, 923 (9th Cir. 2007) (en banc), but employ a presumption to the opposite effect when speaking about a judge's or court's practice in adhering to established state precedent. Some consideration should be in place that state court judges too follow the law as given by the highest state court, and are not simply lawless until the state proves otherwise.

[6] Nothing said herein is meant to demean the impressive efforts of the parties to bring before the undersigned their take on what the pleadings indicated in silent denial cases. They performed much work. However, the parties' conflicting speculations prove the undersigned's point. Each side presents a conflicting picture of what the pleadings mean. There should be no requirement for the undersigned to review the pleadings of tens, or even hundreds of cases, every time a procedural bar motion is made in order to make a judicial speculation of what was in the mind of the state courts.

[7] On another matter, the undersigned has thought conscientiously about whether to end the discussion with a rejection of respondent's methodology of proving consistency of the procedural bar imposition. The undersigned is loath to travel a road not trod by the parties. However, because the issue of consistent application has been raised by both parties, the undersigned will decide it in a manner in which the undersigned believes correct. The undersigned is puzzled why the parties would ignore the *explained* opinions of the state supreme court and appellate courts on the subject of the timeliness bar, and instead look to their own speculation of pleadings in cases where the court explained nothing of its reasoning about applying, or not applying, the bar. No matter how the issue would turn out, the undersigned will

9

There can be no doubt that the California Supreme Court has in its published decisions strongly adhered to the need to apply its timeliness bar, including its exceptions. In re Clark, 5 Cal. 4th 750, 21 Cal. Rptr. 2d 509 (1993); In re Robbins, 18 Cal. 4th 770, 77 Cal. Rptr. 2d 153 (1998); In re Gallego, 18 Cal. 4th 825, 77 Cal. Rptr.2d 132 (1998); In re Sanders, 21 Cal. 4th 697, 87 Cal. Rptr. 2d 899 (1999).  See also, In re Hamilton, 20 Cal. 4th 273, 283 (fn5), 84 Cal. Rptr. 2d 403 (1999).  The opinions are reasoned, and instructive.  Although there may be refinements of the procedural bar to reflect specific facts, nothing about those opinions smacks of inconsistencies.  The undersigned is not aware of further *explicated* state supreme court opinions, published or unpublished, or orders on the subject, and none have been presented by the parties.

Having independently searched for lower appellate opinions, both published and unpublished, the undersigned has found a significant number of opinions on the subject (at least in part) of the Clark/Robbins timeliness bar.[8]  The undersigned has reviewed each case, and although the undersigned will not increase the length of these Findings by discussing each case, the reviewed cases are listed herein.  The opinions clearly show the principled, *consistent* adherence to the bar and its exceptions since the time In re Clark was issued.

In re Crockett, 159 Cal. App. 4th 751, 71 Cal. Rptr. 3d 632, 637 (2008)

In re Sodersten, 146 Cal. App 4th 1163, 1220-1222, 53 Cal. Rptr.3d 572 (2007)

In re Bittaker , 55 Cal. App. 4th 1004, 1012 (fn3), 64 Cal. Rptr. 2d 679 (1997)

People v. Senior, 33 Cal. App. 4th 531, 537-38, 41 C al. Rptr. 2d 1 (1995)

In re Little, 2008 WL 142832 (fn5) (Cal. App. 2008)

People v. Milsap, 2007 WL 3173572 *2 (Cal. App. 2007)

In re Navas, 2006 WL 3604350 *3, 4-5 (Cal. App. 2006)

People v. Pulley, 2006 WL 2501448 *6 (Cal. App. 2006)

---

not ignore the explained opinions.  In this case, the decision favors respondent.

[8] After hearing, the undersigned revised the computer search terms and discovered a plethora of cases on the subject.

1  People v. Fairbanks, 2006 WL 950267 *2-3 (Cal. App. 2006)

2  Cooper v. Superior Court, 2005 WL 3507993 *6-7 (Cal. App. 2005)

3  People v. Molotla, 2004 WL 1068840 *7 (Cal. App. 2004)

4  People v. Pineda-Duque, 2003 WL 23002734 *1 (Cal. App. 2003)

5  In re Scott, 2003 WL 22272576 *3-4 (Cal. App. 2003)

6  People v. Drews, 2003 WL 42550 (Cal. App. 2003) (coram nobis)

The undersigned is at a loss to conceive of any other reasonably acquired proof needed to demonstrate the consistency of application of the timeliness bar in state habeas corpus practice. If the above is not enough, the federal courts should so state and abolish application of this particular bar in federal habeas corpus actions.

ACCORDINGLY, the California timeliness bar as set forth in *inter alia* Clark/Robbins is clearly defined, well established and consistently applied. The claims remanded to this court for further analysis of the Clark/Robbins timeliness bar should be dismissed. Respondent's motion to dismiss (docket #98) is granted; there being no undismissed claims, the action should once again be dismissed in its entirety.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **fifteen** days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  03/10/08                                    /s/ Gregory G. Hollows

                                                                    UNITED STATES MAGISTRATE JUDGE

GGH:gh:035 - mart0223.fr